ELDER, J., with whom BENTON and KOONTZ, JJ.,
join, dissenting.
I respectfully dissent from the majority opinion, which defines a “day” as a continuous twenty-four hour period. Instead, as I stated in my separate opinion accompanying the panel’s decision, I would define a day for purposes of the application of Code § 20—108.2(G)(3)(c) as “the majority of a twenty-four hour period, including an overnight.”
While I disagree with the majority’s definition of a “day,” I applaud its decision to adopt a definition that courts may uniformly apply, something the panel majority declined to do. Unfortunately, the majority’s definition is too strict. In my view, a “day” should be defined in a fashion that equitably accounts for the actual time each parent spends with his or her child. The majority states that the Black’s Law Dictionary definition of a “day” reveals the General Assembly’s intended definition. However, Black’s lists multiple definitions of a “day.” For example, “day” is also defined as follows:
The whole or any part of period of 24 hours from midnight to midnight____
* * *
An artificial period of time, computed from one fixed point to another twenty-four hours later, without any reference to the prevalence of light or darkness____
The period of time, within the limits of a natural day, set apart either by law or by common usage for the transaction of particular business or the performance of labor; as in banking, in laws regulating the hours of labor, in contracts *39 for so many “days work,” and the like, the word “day” may signify six, eight, ten, or any number of hours.
Black’s Law Dictionary, 396 (6th ed. 1990). It is unclear to me how the majority arrived at its determination that one of several of the Black’s definitions supplies the General Assembly’s intent, and, as I stated earlier, the majority announces a standard that is too strict.
The facts of this case reveal that for mid-week visitations, daughter was picked up by husband from school, slept overnight at husband’s residence, ate breakfast with husband, and was returned to school by husband. After school, daughter went to day care, where wife later picked her up. I believe it is unfair to hold that husband should not have been credited with a “day’s” visitation in such instances, simply because daughter attended school during a portion of the twenty-four hour period following the time he gained physical custody of the daughter. I do not believe that the General Assembly meant for courts to apply the definition of a “day” so rigidly.
My definition of a “day” comports with the majority of states that have addressed the shared custody issue. These states have used “overnight” as the standard with which to determine whether parents have shared custody of a child. See, e.g., Colo.Rev.Stat. § 14-10-115(8) (1994) (stating “shared physical custody” means that each parent keeps the child overnight for more than ninety-two nights of the year); Idaho Code Rules Civ.Proc., Rule 6(c)(6) (1993) (stating a determination of “shared physical custody” involves whether a child spends more than 35% of overnights with a parent in a year); Md.Code Ann., Fam.Law § 12-201 (1994) (stating “shared physical custody” means that each parent keeps the child overnight for more than 35% of the year).
The parties agreed at trial that if the court were to count daughter’s midweek visitations with husband as “days,” husband would have exceeded the 110 day threshold. Therefore, I would reverse the trial court’s child support order and remand the order for a reconsideration based on Code § 20- *40 108.2’s shared custody guidelines and the definition of a “day” found herein.